**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RACHEL KLOSOWSKI, ADAM KLOSOWSKI, MICHELLE SCHAFER, LAURA MENDOZA, DORI SHICK, SOUPHARACK VANNASING, LAUREN TEVERBAUGH, JANINE CARLIN, and JONATHAN CARLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FPG LABS, LLC d/b/a OVATION FERTILITY, US GENETIC LAB, LLC d/b/a OVATION GENETICS, and US FERTILITY LLC,<br><br>Defendants. | ) | C.A. No. 24-cv-1210-MN |

**US GENETIC LAB, LLC AND US FERTILITY LLC'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

MCDERMOTT WILL & EMERY LLP

Ethan H. Townsend (#5813)
Anna L. Fosberg (#6802)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3911
ehtownsend@mwe.com
afosberg@mwe.com

Dated: January 6, 2025

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 3

ARGUMENT ........ 4

I. Legal Standard ........ 4

A. Motion To Dismiss Under Rules 12(b)(6) and 9(b) ........ 4

II. Plaintiffs' CAC Should Be Dismissed as an Improper "Shotgun Pleading." ........ 5

III. Plaintiffs Cannot Pierce the Corporate Veil as a Matter of Law. ........ 6

IV. Plaintiffs' CAC Should Be Dismissed for the Reasons Stated in FPG Labs' Brief. ........ 10

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adger v. Carney*,
2020 WL 1475422 (D. Del. Mar. 26, 2020) ....................5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Base Optics Inc. v. Liu*,
2015 WL 3491495 (Del. Ch. May 29, 2015)....................6

*BASF Corp. v. POSM II Properties P'ship, L.P.*,
2009 WL 522721 (Del. Ch. Mar. 3, 2009)....................7

*Baxalta Inc. v. Bayer Healthcare LLC*,
2021 WL 7441631 (D. Del. Apr. 22, 2021)....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................9

*Case Fin., Inc. v. Alden*,
2009 WL 2581873 (Del. Ch. Aug. 21, 2009) ....................7

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999)....................6, 7

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ....................10

*eCommerce Indus., Inc. v. MWA Intel., Inc.*,
2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ....................7, 8

*Empower Brands LLC v. Tristar Prods., Inc.*,
2024 WL 5090532 (D. Del. Dec. 12, 2024)....................9

*Foulke v. Twp. of Cherry Hill*,
2024 WL 3568841 (D.N.J. July 29, 2024)....................5

*PR Acquisitions, LLC v. Midland Funding LLC*,
2018 WL 2041521 (Del. Ch. Apr. 30, 2018) ....................7

*Sentry Supply Inc. v. NLMK N. Am. Plate LLC*,
2019 WL 1388793 (W.D. La. Mar. 27, 2019) ....................10

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
742 F.2d 786 (3d Cir. 1984)....................................................................................5

*Talley v. Harper*,
2017 WL 413069 (W.D. Pa. Jan. 31, 2017)..................................................................5

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008)..........................................................................7

*United States v. Bestfoods*,
524 U.S. 51 (1998)....................................................................................................8

*Urban Outfitters, Inc. v. Dermody Operating Co.*,
2022 WL 4134127 (D. Nev. Sept. 12, 2022)..........................................................5, 6

*Verdantus Advisors LLC v. Parker Infrastructure Partners, LLC*,
2022 WL 611274 (Del. Ch. Mar. 2, 2022)..................................................................7

*Wenske v. Blue Bell Creameries, Inc.*,
2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ..............................................................8

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants US GENETIC LAB, LLC ("Ovation Genetics"), and US FERTILITY LLC ("USF") jointly request that the Court dismiss the claims asserted by Plaintiffs in the Class Action Complaint ("CAC").

**PRELIMINARY STATEMENT**

Plaintiffs are nine individuals who allegedly purchased "PGT-A testing" from Defendant FPG Labs, LLC ("FPG Labs") as an add-on service while undergoing fertility treatment ("IVF") between November 2020 and October 2023. Plaintiffs contend that FPG Labs misled them by touting the benefits of its PGT-A testing, without mentioning external research publications that question whether the upsides of PGT-A testing outweigh potential downsides. Plaintiffs filed a thirteen-count CAC, which asserts claims under five states' consumer fraud statutes in Counts I-VII, the Uniform Commercial Code ("U.C.C.") statutes of fifty states and the District of Columbia in Counts VIII-IX & XIII, and the common law of Delaware under theories of fraud, fraudulent concealment, and unjust enrichment in Counts X-XII. The CAC seeks to hold all three Defendants liable for FPG Labs' alleged conduct, despite the fact that each Defendant is a distinct legal entity, separately incorporated under Delaware law, and despite Plaintiffs' total failure to allege any conduct or action by Ovation Genetics or USF.

The CAC's attempt to impose derivative liability on Ovation Genetics and USF is insufficiently pled and antithetical to Delaware law. By design, the CAC refers to FPG Labs and Ovation Genetics "collectively" as "Ovation," and shotgun pleads hundreds of allegations against "Defendants" without specifying which "Defendant" did what. These pleading tactics attempt to hide the fact that the key conduct alleged in this case is all lodged against FPG Labs, but this pleading gamesmanship fails under Delaware law and federal pleading requirements, as well as under Rule 9(b)'s heightened pleading standard, which requires pleading the "who, what, where, when, and how" of fraud. The CAC should be dismissed as an improper "shotgun pleading."

Beyond lumping together the "Defendants," Plaintiffs also seek to impose derivative liability based on conclusory allegations that USF has exercised "control" over FPG Labs and operated as its "alter ego" since acquiring it in 2023. However, the CAC contradicts its own "alter ego" theory by affirmatively pleading that, post-transaction, USF and FPG Labs continue to operate as separate entities, with separate headquarters, performing separate functions. The CAC does not even attempt to explain the corporate relationship between Ovation Genetics and FPG Labs or USF. Implicitly, the CAC takes the position that a company's owners are automatically liable for its conduct—but this turns a fundamental tenet of Delaware law on its head. Rather, it is axiomatic that imposing derivative liability requires piercing the corporate veil, an "extraordinary" remedy designed for "exceptional" cases. Under black-letter law and binding precedent, a complaint cannot proceed against a company's owner under a veil-piercing theory absent particularized allegations, subject to Rule 9(b), that the company is a "sham" existing solely as a vehicle for fraud. The CAC does not satisfy this heightened standard.

Critically, Plaintiffs do not even allege that USF is the direct parent of FPG Labs, nor that Ovation Genetics is in a parent-subsidiary relationship with FPG Labs. Nor could such allegations be made, as no Defendant is the parent of another. *See* D.I. 13-15. Thus, not only are the CAC's allegations insufficient to plead veil-piercing, Plaintiffs are attempting to impose derivative liability based on broader "horizontal" or "single business enterprise doctrine" veil-piercing theories, which are not recognized under Delaware law. Thus, the CAC fails to plead any basis to hold Ovation Genetics or USF liable for another's conduct; claims against them must be dismissed.

Plaintiffs also fail to state a claim against any Defendant for a host of additional reasons, as set forth in FPG Labs' Opening Brief in Support of Its Motion To Dismiss Plaintiffs' Class Action Complaint ("FPG Labs' Brief"), filed concurrently. In addition to the grounds for dismissal

detailed below, Ovation Genetics and USF also hereby adopt and incorporate by reference FPG Labs' Brief in its entirety, as if fully set forth herein, and seek dismissal on each and every ground stated therein.

**STATEMENT OF FACTS[1]**

As a preliminary matter, there are no factual allegations concerning culpable conduct by Ovation Genetics or USF. Plaintiffs are nine individuals who purchased PGT-A testing from FPG Labs as an add-on service during the IVF process between November 2020 and October 2023. CAC ¶¶ 25, 293-313. FPG Labs is a Delaware limited liability company headquartered in Brentwood, Tennessee that "promotes itself on its current website as a national leading network of fertility laboratories providing leading-edge treatment." *Id.* ¶ 37. Ovation Genetics is a Delaware limited liability company headquartered in Franklin, Tennessee that conducted PGT-A testing during the relevant time period. *Id.* ¶ 38.

Plaintiffs describe USF as a Delaware limited liability company headquartered in Rockville, Maryland that provides non-clinical administrative and operational support to IVF/fertility practices nationwide. *Id.* ¶¶ 39-40. In a press release from 2023, USF announced its intentions to acquire FPG Labs. The press release states that, post-transaction, USF will "continue to operate as a management service organization" offering practice management solutions to fertility practices across the country, while FPG Labs will "continue to operate as a laboratory management service organization and offer laboratory management solutions to fertility practices across the U.S." *Id.* ¶ 42. To this day, USF is not the parent of either FPG Labs or Ovation Genetics. *See* D.I. 13-15.

[1] The CAC's allegations are summarized herein as pled, for purposes of this Motion only, with no representation that Defendants agree with the CAC's characterization of facts.

Plaintiffs claim that misleading statements were made on a website, www.ovationfertility.com, and in an "informed consent" form about the accuracy and benefits of PGT-A testing. *E.g.*, CAC ¶¶ 11, 57, 259. Despite alleging that FPG Labs "maintains" the website at issue, Plaintiffs describe the website as a marketing tool of "Defendants." *Id.* ¶¶ 11, 37. Plaintiffs reason that USF "is responsible for [FPG Labs'] website," because several individuals work as executives for both USF and FPG Labs. *Id.* ¶¶ 48-53, 56. Further, despite alleging that the "informed consent" form at issue was provided by FPG Labs, specifically, Plaintiffs nonetheless take issue with "Defendants" for failing to "inform consumers concerning the numerous studies evidencing issues with PGT-A." *Id.* ¶¶ 224, 267.

## ARGUMENT

## I. LEGAL STANDARD

### A. Motion To Dismiss Under Rules 12(b)(6) and 9(b)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (internal quotations omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

Fraud allegations must satisfy Rule 9(b), which "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." *Seville Industrial Machinery Corp. v.*

*Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "[T]he complaint must provide all of the essential factual background"—"the who, what, when, where, and how of the events at issue." *Baxalta Inc. v. Bayer Healthcare LLC*, 2021 WL 7441631, at *2 (D. Del. Apr. 22, 2021).

## II. PLAINTIFFS' CAC SHOULD BE DISMISSED AS AN IMPROPER "SHOTGUN PLEADING."

Plaintiffs' CAC is an improper "shotgun pleading"—a "complaint that fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Foulke v. Twp. of Cherry Hill*, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024). Such pleadings violate federal pleading rules, warranting dismissal. *See Adger v. Carney*, 2020 WL 1475422, at *6 (D. Del. Mar. 26, 2020) (dismissing "shotgun pleading" that violated the pleading requirements of Federal Rule of Civil Procedure 8); *Foulke*, 2024 WL 3568841, at *7 (same). Shotgun pleadings are disfavored in the Third Circuit, as they leave Defendants and the Court with the arduous task of deciphering which allegations pertain to which Defendant. *See, e.g.*, *Adger*, 2020 WL 1475422, at *6 ("[A] shotgun pleading does not give defendants adequate notice of the claims brought against them and the grounds upon which each claim rests"); *Talley v. Harper*, 2017 WL 413069, at *1 (W.D. Pa. Jan. 31, 2017) ("The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant or the Court.").

Here, the CAC contains hundreds of allegations lumping "Defendants" together and refers to FPG Labs and Ovation Genetics "collectively" throughout. *E.g.*, CAC at 1; CAC ¶¶ 224, 267. Lumping Defendants together is especially problematic where, as here, Plaintiffs' claims sound in fraud and are subject to Rule 9(b)'s heightened pleading requirements. For example, in *Urban Outfitters, Inc. v. Dermody Operating Co.*, the court held that Rule 9(b) requires plaintiffs to allege

fraud with particularity as to each specific defendant. 2022 WL 4134127, at *3 (D. Nev. Sept. 12, 2022). The plaintiff's allegations fell short where they failed to "identify[] the particular time, place, and circumstances of [each defendant's] alleged deceptions" and instead opted to "lump" the defendants together. *Id.* (dismissing claim under Nevada consumer fraud statute). Plaintiffs' CAC presents the same problem, as fraud cannot be pled with particularity based on the alleged conduct of "Defendants," or the collective entity "Ovation." *See, e.g.*, CAC ¶ 211 (alleging that "Defendants" omitted material facts in "their" advertising materials for PGT-A). Thus, Plaintiffs' failure to plead claims against USF and Ovation Genetics, with particularity, requires dismissal as a "shotgun pleading" pursuant to Federal Rules of Civil Procedure 8 and 9(b). *Adger*, 2020 WL 1475422, at *6; *Urban Outfitters*, 2022 WL 4134127, at *3.

## III. PLAINTIFFS CANNOT PIERCE THE CORPORATE VEIL AS A MATTER OF LAW.

Plaintiffs do not allege any misconduct by Ovation Genetics or USF. Per the CAC, Plaintiffs "purchased PGT-A testing from [FPG Labs]," and FPG Labs is the source of the purported conduct underlying their claims. *E.g.*, *id.* ¶¶ 11, 25, 258. Despite acknowledging that the three Defendants are separately incorporated under Delaware law, with separate headquarters in three different cities (and two different states), Plaintiffs seek to impose derivative liability on USF and Ovation Genetics for FPG Labs' alleged actions, based on conclusory allegations related to "alter ego" liability. Plaintiffs fail to plead facts sufficient to justify piercing the corporate veil, and their claims against USF and Ovation Genetics must be dismissed.

Piercing the corporate veil is an "extraordinary equitable remedy." *Base Optics Inc. v. Liu*, 2015 WL 3491495, at *23 (Del. Ch. May 29, 2015). It is difficult to plead and more difficult to get. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult

task."). Courts will only pierce the corporate veil in "exceptional" cases. *See eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Sept. 30, 2013); *Case Fin., Inc. v. Alden,* 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (same).

The "alter ego" analysis factors are: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." A plaintiff must also demonstrate "an overall element of injustice or unfairness." *Verdantus Advisors LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *24 (Del. Ch. Mar. 2, 2022). "The degree of control required to pierce the veil is exclusive domination and control . . . to the point that [the entity] no longer has legal or independent significance of its own." *PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018). In other words, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184.

Under these principles, Plaintiffs must plead that the companies operated as a single economic entity, and that the two entities existed solely to perpetuate fraud. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528-29 (D. Del. 2008); *BASF Corp. v. POSM II Properties P'ship, L.P.*, 2009 WL 522721, at *8 n.50 (Del. Ch. Mar. 3, 2009). Importantly, Plaintiffs must plead the facts constituting fraud with particularity under Rule 9(b). *Id.*

Plaintiffs fail under this standard. In the CAC, Plaintiffs conflate Ovation Genetics and FPG Labs as "Ovation," and contend that all three Defendants amount to one company because (1) USF acquired "Ovation" in 2023, and (2) since then, "Ovation has been operated by US Fertility as an alter ego of US Fertility without regard for corporate façade with the same

individuals running both companies." CAC ¶ 9. These conclusory allegations are insufficient and contradictory. "Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity." *eCommerce Indus.,* 2013 WL 5621678, at *27. Indeed, "absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence." *Id.* This is especially true where, as here, Plaintiffs admit that two companies operate separately and perform different functions. *See* CAC ¶ 42.

Plaintiffs' most far-reaching attempt to plead alter-ego is their allegation that Defendants' "sharing of services, assets, and personnel have resulted in an excessive comingling that far exceeds any norms that characterize an affiliated but separate company relationship." CAC ¶¶ 48-53. But sharing corporate services is not fraud, and "[c]onclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management [do not] suffice to state a claim for veil-piercing." *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018). It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

Plaintiffs further attempt to establish "control" by alleging that "US Fertility is responsible for [FPG Labs'] website given the management structure detailed above." CAC ¶ 56. This conclusory allegation carefully avoids claiming that USF actually managed any website. Rather, it simply repackages the same allegations of common personnel described above in a vague attempt to connect USF to the website—but such conclusory allegations do not pass muster under

*Twombly*. Ovation Genetics is not mentioned at all. Managing a website does not plead, nor imply, the existence of a sham entity.

Such bare-bones assertions do not establish anything resembling fraud, with anything resembling particularity. While Plaintiffs identified the individuals who may have similar roles, the CAC fails to specify at all how these individuals are perpetuating a fraud. All Plaintiffs say is that "it is beyond dispute that US Fertility runs all aspects of [FPG Labs'] business and is responsible for it, and that [FPG Labs] is nothing more than a brand-name for US Fertility." *Id.* ¶ 54. The reality could not be more opposite. Defendants are separately incorporated with separate headquarters, because they are separate entities and they provide separate functions, as conceded by Plaintiffs. *See* CAC ¶ 42 (noting that USF "will continue to operate as a management service," offering "practice management solutions to fertility practices" post-transaction, while FPG Labs "will continue to operate as a laboratory management service organization" offering "laboratory management solutions to fertility practices"). FPG Labs is headquartered in Brentwood, Tennessee; Ovation Genetics is headquartered in Franklin, Tennessee; and USF is headquartered in Rockville, Maryland. *Id.* ¶¶ 37-39.[2]

Indeed, the CAC does not even allege that USF is the parent of FPG Labs, and Ovation Genetics is not alleged to be in any sort of parent-subsidiary relationship with FPG Labs. Nor could such allegations be made, as no Defendant is the parent of another. *See* D.I. 13-15. Further, any attempt to plead horizontal veil piercing must fail, as horizontal veil piercing among sister entities is not recognized under Delaware law. *See, e.g.*, *Empower Brands LLC v. Tristar Prods., Inc.*, 2024 WL 5090532, at *4 (D. Del. Dec. 12, 2024) (holding that leave to amend was futile where plaintiff was "asserting a horizontal veil piercing theory unsupported by Delaware law"); *see also*

[2] USF provides non-clinical administrative services whereas FPG Labs is an IVF Laboratory. CAC ¶ 42. USF could not, and does not, perform the functions that FPG Labs performs.

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *7 (Del. Ch. Sept. 5, 2023); *Sentry Supply Inc. v. NLMK N. Am. Plate LLC*, 2019 WL 1388793, at *5 (W.D. La. Mar. 27, 2019) ("Delaware has not adopted the single business enterprise doctrine as a means of piercing the corporate veil."). Plaintiffs fail to plead any basis to hold USF or Ovation Genetics liable for FPG Labs' conduct, requiring dismissal of all claims against them.

## IV. PLAINTIFFS' CAC SHOULD BE DISMISSED FOR THE REASONS STATED IN FPG LABS' BRIEF.

In addition to the foregoing grounds for dismissal, Defendants USF and Ovation Genetics also hereby adopt and incorporate by reference FPG Labs' Brief in its entirety, as if fully set forth herein, and seek dismissal on each and every ground stated therein. *See* FPG Labs' Brief, filed concurrently. Such grounds for dismissal apply with equal force to USF and Ovation Genetics.

Accordingly, for the reasons stated in FPG Labs' Brief, USF and Ovation Genetics hereby make the following arguments in support of dismissal of the CAC in full: (1) Plaintiffs lack Article III standing for failure to allege injury-in-fact or causation; (2) Plaintiffs further lack Article III standing to pursue claims under the laws of states where they do not reside and did not purchase PGT-A testing services; (3) Plaintiffs' claims fail under the learned intermediary doctrine; (4) Plaintiffs fail to plead fraud with the requisite particularity, fail to allege reliance, and cannot state a Louisiana consumer protection claim due to the statute's prohibition on class actions; (5) Plaintiffs' state law U.C.C. claims must be dismissed because the CAC fails to allege a sale of goods, privity (as required under the laws of California, North Carolina, and Nevada), that *their* PGT-A testing was defective, or reliance; (6) Plaintiffs' Louisiana and Texas consumer fraud claims (Counts V-VI) are time-barred in full, while Counts IV & X-XII are time-barred as to certain Named Plaintiffs (Count IV is time-barred as to California Named Plaintiff Mendoza; Counts X-XI are time-barred as to the Louisiana Named Plaintiffs; and Count XII is time-barred as to the

Texas Named Plaintiff); and (7) Plaintiffs' unjust enrichment claim is inadequately pled for failure to identify the laws of any particular jurisdiction. *See* FPG Labs' Brief, filed concurrently.

## CONCLUSION

For the reasons set forth above, Defendants US GENETIC LAB, LLC ("Ovation Genetics"), and US FERTILITY LLC ("USF") respectfully request that the Court dismiss the Class Action Complaint in its entirety with prejudice.

**MCDERMOTT WILL & EMERY LLP**

/s/ *Anna L. Fosberg*
Ethan H. Townsend (#5813)
Anna L. Fosberg (#6802)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3911
ehtownsend@mwe.com
afosberg@mwe.com

*Attorneys for Defendants*

OF COUNSEL:

Daniel R. Campbell
Brigid McCarthy
Chelsea Mounayer
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606-0029

Dated: January 6, 2025