**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RACHEL KLOSOWSKI, ADAM KLOSOWSKI, MICHELLE SCHAFER, LAURA MENDOZA, DORI SHICK, SOUPHARACK VANNASING, LAUREN TEVERBAUGH, JANINE CARLIN, and JONATHAN CARLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>FPG LABS, LLC d/b/a OVATION FERTILITY, US GENETIC LAB, LLC d/b/a OVATION GENETICS, and US FERTILITY LLC,<br><br>Defendants. | ) | C.A. No. 24-cv-1210-MN |

**DEFENDANT FPG LABS, LLC'S OPENING BRIEF IN SUPPORT OF ITS FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**MCDERMOTT WILL & EMERY LLP**

Ethan H. Townsend (#5813)
Anna L. Fosberg (#6802)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3911
ehtownsend@mwe.com
afosberg@mwe.com

*Attorneys for Defendants*

Dated: January 6, 2025

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ... iii

PRELIMINARY STATEMENT ... 1

STATEMENT OF FACTS ... 2

ARGUMENT ... 4

I. Legal Standards ... 4

A. Motion To Dismiss Under Rules 12(b)(6) and 9(b) ... 4

B. Choice-of-Law Principles ... 4

II. Plaintiffs Lack Standing To Pursue Any of Their Claims. ... 5

A. The CAC Fails To Establish Injury or Causation. ... 5

B. Plaintiffs Lack Standing To Assert Claims Outside Their Home States. ... 7

III. Plaintiffs' Claims Fail Under the Learned Intermediary Doctrine. ... 8

IV. Plaintiffs' Fraud-Based Claims (Counts I-VII & X-XII) Fail for Several Reasons. ... 10

A. Plaintiffs Fail To Plead Fraud with the Requisite Particularity. ... 10

B. Plaintiffs Lack an Essential Element of Fraud: Reliance ... 15

C. Louisiana Does Not Allow Class Actions for Consumer Fraud. ... 16

V. Plaintiffs' U.C.C. Claims (Counts VIII, IX, and XIII) Fail for Several Reasons. ... 16

A. Plaintiffs Fail To Allege Privity ... 18

B. Plaintiffs Fail To Allege that *Their* PGT-A Testing Was Defective. ... 18

C. Plaintiffs' Express Warranty Claims Must Be Dismissed for Lack of Reliance ... 19

VI. Counts V-VI and Counts IV & X-XII Are Time-Barred in Whole or Part. ... 19

VII. Plaintiffs' Unjust Enrichment Claim (Count XII) Is Inadequately Pled. ... 20

CONCLUSION ... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accelerant Twister, LLC v. Marjo, LLC*,
2023 WL 4457422 (D. Del. July 11, 2023) ....................13

*In re Actiq Sales & Mktg. Litig.*,
307 F.R.D. 150 (E.D. Pa. 2015) ....................5, 20

*Adger v. Carney*,
2020 WL 1475422 (D. Del. Mar. 26, 2020) ....................11, 18

*Altronics of Bethlehem, Inc. v. Repco, Inc.*,
957 F.2d 1102 (3d Cir. 1992) ....................18

*Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*,
407 S.W.3d 274 (Tex. App. 2013) ....................19

*Am. Suzuki Motor Corp. v. Superior Court*,
44 Cal. Rptr. 2d 526 (Ct. App. 1995) ....................18

*Arçelik, A.Ş. v. E.I. Du Pont de Nemours & Co.*,
619 F. Supp. 3d 473 (D. Del. 2022) ....................14

*Ascot Corporation, LLC v. I&R Waterproofing, Inc.*,
286 N.C. App. 470 (N.C. App. 2022) ....................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*In re Auto. Parts Antitrust Litig.*,
2013 WL 2456612 (E.D. Mich. June 6, 2013) ....................20

*Avenarius v. Eaton Corp.*,
898 F. Supp. 2d 729 (D. Del. 2012) ....................20

*Baxalta Inc. v. Bayer Healthcare LLC*,
2021 WL 7441631 (D. Del. Apr. 22, 2021) ....................4, 11

*Bean v. Upsher-Smith Pharms., Inc.*,
765 F. App'x 934 (4th Cir. 2019) ....................8, 9

*Butts v. Cibo Vita, Inc.*,
2023 WL 2588012 (E.D. Ca. Ma. 2, 2023) ....................10

*Carrozza v. CVS Pharmacy, Inc.*,
992 F.3d 44 (1st Cir. 2021) ....................17

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ....................20

*City of High Point v. Suez Treatment Sols. Inc.*,
485 F. Supp. 3d 608 (M.D.N.C. 2020) ....................15

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ....................11

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) ....................11

*Darne v. Ford Motor Co.*,
2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ....................15

*In re Diet Drugs Litig.*,
352 F. Supp. 2d 533 (E.D. Pa. 2004) ....................7

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ....................20

*Docena v. Navy Fed. Credit Union*,
2016 WL 53826 (D. Nev. Jan. 4, 2016) ....................16

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ....................15

*Eckler v. Wal-Mart Stores, Inc.*,
2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ....................13

*Ellis v. C.R. Bard, Inc.*,
311 F.3d 1272 (11th Cir. 2002) ....................8

*Energy Investors Fund, L.P. v. Metric Constructors, Inc.*,
351 N.C. 331 (N.C. 2000) ....................18

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ....................12

*In re Flonase Antitrust Litigation*,
692 F. Supp. 2d. 524 (E.D. Pa. 2010) ....................8

*Foulke v. Twp. of Cherry Hill*,
2024 WL 3568841 (D.N.J. July 29, 2024) ....................18

*Franulovic v. Coca-Cola Co.*,
390 Fed. App'x. 125 (3d Cir. 2010)....14

*Freed v. St. Jude Med., Inc.*,
364 F. Supp. 3d 343 (D. Del. 2019)....2, 19

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995)....13, 16

*Garner v. Global Plasma Sols. Inc.*,
590 F. Supp. 3 (D. Del. 2022)....13

*Gaston v. PBI Gordon Corp.*,
2014 WL 4114324 (M.D.N.C. Aug. 20, 2014)....18

*Gonzalez v. Bayer Healthcare Pharms., Inc.*,
930 F. Supp. 2d 808 (S.D. Tex. 2013)....9

*Greening v. Western Reserve Life Assurance Co.*,
439 F. Supp. 2d 612 (M.D. La. 2006)....16

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
238 Cal. App. 4th 124 (Cal. App. 2015)....15

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
729 F. Supp. 3d 989 (C.D. Cal. 2024)....10

*Hill v. Eli Lilly & Co.*,
2020 WL 4925688 (D. Nev. Aug. 21, 2020)....18

*Hodges v. Vitamin Shoppe, Inc.*,
2014 WL 200270 (D.N.J. Jan. 15, 2014)....13

*Hunt v. United States Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008)....15

*Hyundai Motor Co. v. Rodriguez*,
995 S.W.2d 661 (Tex. 1999)....18

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J. Feb. 15, 2019)....7

*In re Johnson & Johnson Talcum Powder Litig.*,
903 F.3d 278 (3d Cir. 2018)....5, 6

*Johnson v. Smith & Nephew, Inc.*,
621 F. Supp. 3d. 593 (W.D.N.C. 2022)....17

*Kamlade v. Leo Pharma Inc.*,
2022 WL 358429 (E.D. Cal. Feb. 7, 2022)....9

*Kaneff v. Del. Title Loans, Inc.*,
587 F.3d 616 (3d Cir. 2009)....4

*KB Home Nev., Inc. v. Dunrite Constr.*,
402 P.3d 1253 (Nev. 2017)....18

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010)....6

*Kovalev v. Lidl US, LLC*,
647 F. Supp. 3d 319 (E.D. Pa. 2022)....13

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017)....14

*Lacy v. G.D. Searle & Co.*,
567 A.2d 398 (Del. 1989)....8, 9

*Landreneau v. Fleet Fin. Grp.*,
197 F. Supp. 2d 551 (M.D. LA 2002)....16

*Langston v. Ethicon Inc.*,
2021 WL 6198218 (N.D. Tex. Dec. 31, 2021)....11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....7

*Marcus v. BMW of N. Am.*,
687 F.3d 583 (3d Cir. 2012)....16

*McLaughlin v. Bayer Corp.*,
172 F. Supp. 3d 804 (E.D. Pa. 2016)....12

*Morris v. Sears, Roebuck and Co.*,
765 So.2d 419 (La. App. 2000)....16

*NAC Consulting, LLC v. 3Advance, LLC*,
650 F. Supp. 3d 441 (E.D. Va. 2023)....16

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015)....7

*In re Niaspan Antitrust Litig.*,
42 F. Supp. 3d 735 (E.D. Pa. 2014)....8

*In re Nissan N. Am., Inc.*,
122 F.4th 239 (6th Cir. 2024) ....................15

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
710 F. Supp. 2d 458 (D. Del. 2010)....................4

*Resnick v. Hyundai Motor Am., Inc.*,
2016 WL 9455016 (C.D. Cal. Nov. 14, 2016)....................15

*Rivera v. Wyeth-Ayerst Labs*,
283 F.3d 315 (5th Cir. 2002) ....................7

*Rounds v. Genzyme Corp.*,
440 F. App'x 753 (11th Cir. 2011) ....................8, 9

*In re Sensipar Antitrust Litig.*,
2022 WL 736250 (D. Del. Mar. 11, 2022) ....................7

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
742 F.2d 786 (3d Cir. 1984)....................4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) ....................20

*Stephens v. Teva Pharms., U.S.A., Inc.*,
70 F. Supp. 3d 1246 (N.D. Ala. 2014)....................9

*Stube v. Pfizer Inc.*,
446 F. Supp. 3d 424 (W.D. Ark. 2020)....................9, 10

*In re Subaru Battery Drain Prod. Liab. Litig.*,
2021 WL 1207791 (D.N.J. Mar. 31, 2021)....................14

*TL of Florida, Inc. v. Terex Corp.*,
54 F. Supp. 3d 320 (D. Del. 2014)....................5

*In re TMJ Implants Prod. Liab. Litig.*,
872 F. Supp. 1019 (D. Minn. 1995)....................17

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
117 F. Supp. 3d 722 (M.D.N.C. Aug. 3, 2015)....................10

*Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*,
318 A.3d 450 (Del. Ch. 2024)....................13

*Tuminello v. ABC Ins. Co.*,
381 So.3d 320 (La. App. 2024)....................19

*U.S. Roofing, Inc. v. Credit All. Corp.*,
228 Cal. App. 3d 1431 (Cal. App. 1991)....18

*Urban Outfitters, Inc. v. Dermody*,
2022 WL 4134127 (D. Nev. Sept. 12, 2022)....10, 11

*In re Valsartan Litig.*,
2021 WL 100204 (D.N.J. Jan. 12, 2021)....7

*VeroBlue Farms USA, Inc. v. Wulf*,
465 F. Supp. 3d 633 (N.D. Tex. 2020)....11

*Vial v. Gas Solutions, Ltd.*,
187 S.W.3d 220 (Tex. App. 2006)....15

*Wagner & Brown, Ltd. v. Horwood*,
58 S.W.3d 732 (Tex. 2001)....20

*Weinstat v. Dentsply Internat., Inc.*,
180 Cal. App. 4th 1213 (Cal. App. 2010)....19

*In re Wellbutrin XL Antirust Litigation*,
260 F.R.D. 143 (E.D. Pa. 2009)....8, 20

*In Re Yasmin Prods. Liab. Litig.*,
692 F. Supp. 2d 1012 (S.D. Ill. 2010)....17

**Statutes**

10 Del. C. § 8121....5

810 ILCS 5/2-102(1)....17

19 Pa. Stat. § 2102(a)....17

Cal. U.C.C. § 2102....17

Del. Code Ann. tit. 6 § 2-102(1)....17

Fla. Stat. Ann. § 672.102....17

La. Civ. Code Ann. Art. 2520....19

La. Civ. Code Ann. Art. 2520, Art. 2322.1....17

La. Civ. Code tit. XXIV, Art. 3492....20

La. Rev. Stat. tit. 51, § 1409(E)....19

N.C. Gen. Stat. Ann. § 25-2-103(1)(d) ....17

N.R.S. § 104.2607(3) ....20

N.Y. U.C.C. Law § 2-102 ....17

Nev. Rev. Stat. §§ 104.2102(1)....17

Tex. Bus. & Com. Code § 17.565....20

U.C.C. § 2-102 ....17

U.C.C. § 2-105 ....18

**Other Authorities**

Irick, M., *Age of an Information Revolution: The Direct-to-Consumer Genetic Testing Industry and the Need for a Holistic Regulatory Approach*, San Diego L. Rev., 49: 279, 2012....10

Marhant, G., *From Genetics to Genomics: Facing the Liability Implications in Clinical Care* (J. Law Med. Ethics, 2020) ....10

Restatement (Third) of Unfair Competition § 2, cmt. d (1995)....15

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant FPG LABS, LLC ("FPG Labs") respectfully requests that the Court dismiss the Class Action Complaint.

## PRELIMINARY STATEMENT

Plaintiffs are nine individuals residing in North Carolina, California, Nevada, Louisiana, and Texas (the "Named Plaintiff States") who purchased "PGT-A testing" while undergoing fertility treatment ("IVF"). PGT-A testing is performed on embryos to screen for certain genetic abnormalities. Despite being packaged under various statutory and common law labels, the gravamen of each count in Plaintiffs' Class Action Complaint ("CAC") is that FPG Labs did not adequately warn IVF patients about the potential downsides of PGT-A testing. However, Plaintiffs do not allege that they experienced any of those downsides—for instance, there is no allegation that any Plaintiff received inaccurate test results. Further, Plaintiffs knew about the purported downsides long before making a purchase.

Plaintiffs' thirteen-count CAC asserts claims under the Named Plaintiff States' consumer fraud statutes in Counts I-VII, the Uniform Commercial Code ("U.C.C.") statutes of fifty states and the District of Columbia in Counts VIII-IX & XIII, and the common law of Delaware under theories of fraud, fraudulent concealment, and unjust enrichment in Counts X-XII. The notion that Delaware law should be imposed upon a nationwide class alleging fraud and quasi contract lacks a valid legal basis and has been rejected by Delaware courts.

Plaintiffs fail to plausibly allege that any Defendant caused any Plaintiff to be injured *at all*, and their inability to plead the essential elements of injury and causation requires dismissal of each count in the CAC. Their claims under the laws of states where they do not claim to have suffered any injury also lack Article III standing. Even if the CAC had pled injury and causation—which it has not—Plaintiffs' remaining claims under the laws of the five Named Plaintiff States still fail. Plaintiffs affirmatively plead that PGT-A testing is purchased exclusively by IVF patients

through their fertility doctors. Thus, all claims are barred under the learned intermediary doctrine.

Plaintiffs' fraud-based allegations fall short of Rule 9(b)'s heightened pleading requirements (the "who, what, where, when, and how" of fraud), and for failure to plausibly allege the essential element of reliance/deception. Their Louisiana consumer fraud claim further fails because that statute expressly prohibits class action claims. Meanwhile, Plaintiffs' state U.C.C. claims fail for several reasons, not the least of which is because FPG Labs' PGT-A testing services are not a "sale of goods," and therefore are not actionable. Finally, Counts V and VI are time-barred in full, while Counts IV and X-XII are time-barred in part, as to certain Named Plaintiffs, under the applicable statutes of limitations. Thus, Plaintiffs' CAC must be dismissed in its entirety.

## STATEMENT OF FACTS[1]

Plaintiffs are nine individuals who purchased PGT-A testing as an add-on service during IVF between November 2020 and October 2023. CAC ¶¶ 25, 293-313. FPG Labs is a Delaware LLC headquartered in Brentwood, Tennessee that "promotes itself on its current website as a national leading network of fertility laboratories providing leading-edge treatment." *Id.* ¶ 37. The remaining two Defendants are US GENETIC LAB, LLC ("Ovation Genetics"), a Delaware LLC headquartered in Franklin, Tennessee, and US FERTILITY LLC ("USF"), a Delaware LLC headquartered in Rockville, Maryland. *Id.* ¶¶ 37-40. The CAC refers to FPG Labs and Ovation Genetics "collectively" as "Ovation," and each Named Plaintiff purchased PGT-A testing "from Ovation." CAC at 1, ¶¶ 293, 296, 299, 302, 305, 308, 311.

Plaintiffs claim that FPG Labs made misleading statements in an "informed consent" form[2]

---

[1] The CAC incorrectly identifies FPG Labs as the entity responsible for the alleged conduct. However, this Motion treats all well-pled facts as true, even if Defendants disagree with the alleged facts.

[2] Because Plaintiffs cite portions of the informed consent form, FPG Labs attaches it here as Exhibit 1 under the incorporation by reference doctrine. *Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 349 (D. Del. 2019) ("In resolving a motion to dismiss, a court may consider . . . documents integral to or explicitly relied upon in the complaint, and matters of public record.").

and on a website and about the accuracy and benefits of PGT-A testing. For instance, Plaintiffs allege that FPG Labs marketed PGT-A testing as something that "benefits everyone," "is greater than 98% accurate," "increases chance of pregnancy," "leads to a higher chance of a healthy pregnancy," "reduces the risk of miscarriage," "reduces time to pregnancy," and "leads to no more mosaic embryos." *Id.* ¶ 93. Plaintiffs fail to allege who made these statements, what was said, where or when they were published, or what further context was provided. Plaintiffs did not visit any website or personally read, review, or have exposure to these statements.

Plaintiffs say these representations were misleading according to scientific studies published since 2011, of which Plaintiffs had knowledge. *Id.* ¶ 104 *et seq*. Specifically, FPG Labs allegedly "failed to inform consumers concerning the numerous studies evidencing issues with PGT-A." *Id.* ¶ 267 *et seq.* Plaintiffs claim that FPG Labs' failure to warn them of these studies amounted to deceptive conduct by material omission. *Id.* Oddly, however, Plaintiffs themselves had knowledge of these studies long before purchasing PGT-A testing. Further, FPG Labs' representations were accompanied by disclaimers such as the following:

> Validation on positive controls demonstrated accuracy of 99% for PGT-A. Data above pertains to samples created using intracytoplasmic sperm injection (ICSI). In samples created with conventional insemination, diagnostic accuracy is reduced.

*Id.* ¶ 225; *see also* ¶ 228 (disclaiming that FPG Labs' PGT-A testing "has not been cleared or approved by the U.S. Food and Drug Administration"). Plaintiffs fail to plead whether each representation that the CAC attributes to FPG Labs was accompanied by the disclaimer.

The CAC includes several screenshots from some version of a website. *Id.* ¶¶ 229-255. However, the images depict only partial sentence fragments, which appear to be abruptly separated from their surrounding context. For instance, one image depicts a statement marked with an asterisk, but the explanatory text of the asterisk is not included. *Id.* ¶ 231 (depicting statement that PGT-A testing leads to "Higher pregnancy rates: 62% vs. 50% with traditional NGS*").

# ARGUMENT

## I. Legal Standards

### A. Motion To Dismiss Under Rules 12(b)(6) and 9(b)

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.*. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

Further, allegations of fraud must satisfy Rule 9(b), which "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged[.]" *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). "[T]he complaint must provide all of the essential factual background"— "the who, what, when, where, and how of the events at issue." *Baxalta Inc. v. Bayer Healthcare LLC*, 2021 WL 7441631, at *2 (D. Del. Apr. 22, 2021).

### B. Choice-of-Law Principles

Delaware's choice of law rules apply to this case. *See Kaneff v. Del. Title Loans, Inc.,* 587 F.3d 616, 621 (3d Cir. 2009). This entails a two-part inquiry, under which courts: (1) compare the laws of the competing jurisdictions to determine whether the laws actually conflict on a relevant point, and (2) if an actual conflict exists, evaluate which state has the "most significant relationship" under the Restatement (Second) of Conflict of Laws. *Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (holding that laws of plaintiffs'

home states applied in multi-state class action alleging fraud and misrepresentation); *In re Actiq Sales & Mktg. Litig.*, 307 F.R.D. 150, 163-67 (E.D. Pa. 2015) (same for unjust enrichment).

Regarding statutes of limitations, Delaware has a Borrowing Statute that applies "when a non-resident plaintiff files an action in Delaware for claims arising outside of Delaware." *TL of Florida, Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 326 (D. Del. 2014). An action is time-barred "after the expiration of whichever is shorter, the time limited by the law [of Delaware], or the time limited by the law of the state or country where the cause of action arose." 10 Del. C. § 8121.

## II. Plaintiffs Lack Standing To Pursue Any of Their Claims.

### A. The CAC Fails To Establish Injury or Causation.

All of Plaintiffs claims fail, because the CAC fails to establish two essential requirements for Article III standing—injury and causation. *See In re Johnson & Johnson Talcum Powder Litig.*, 903 F.3d 278, 283 (3d Cir. 2018) (To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). To allege an "economic injury as a result of a purchasing decision," a plaintiff must "do more than simply characterize that purchasing decision as an economic injury." *Id.* at 281. Specifically, the "plaintiff must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that the plaintiff failed to receive the economic benefit of her bargain." *Id.* Here, although Plaintiffs attack the accuracy and effectiveness of PGT-A testing in general, they do not allege that *their* test results were inaccurate or that *their* IVF outcomes suffered. Rather, Plaintiffs allege economic injury from purchasing PGT-A testing, as they supposedly "would not have purchased [it] had they known the truth." CAC ¶ 27. Such allegations fail to establish standing. 903 F.3d at 281.

In *Johnson & Johnson*, the Third Circuit affirmed dismissal of a consumer class action for failure to establish "injury in fact" where plaintiff alleged an "economic injury" from purchasing

baby powder that allegedly increased the risk of ovarian cancer. The plaintiff did not allege that she developed ovarian cancer or was at an increased risk of developing it. Rather, "[h]er theory of recovery [was] simply that she suffered an economic injury by *purchasing* improperly marketed Baby Powder." *Id.* at 283. Like Plaintiffs here, the plaintiff in *Johnson & Johnson* alleged that, "had she been properly informed that using Baby Powder could lead to an increased risk of developing ovarian cancer, she would not have purchased the powder in the first place." *Id.* at 281. The court remarked that the allegations about ovarian cancer, while serious and "artfully woven," ultimately had "little connection to the alleged economic injury that form[ed] the basis of [the] claim." *Id.* The plaintiff had used the product as expected and did not allege any physical injury or risk of future injury therefrom. The court concluded that such a plaintiff "has not suffered an economic injury sufficient to bring a claim in federal court," as "**<u>buyer's remorse</u>**, without more, is not a cognizable injury under Article III." *Id.* (emphasis added).

The CAC fails for the same reasons. Plaintiffs got what they paid for: PGT-A testing to screen their embryos for genetic abnormalities. There is no allegation that Plaintiffs' results were inaccurate or failed to function as expected. *See id.* at 289 ("Although [plaintiff] contends that Baby Powder is 'unsafe,' her own allegations require us to conclude that the powder she received was, in fact, *safe as to her*," because she "did not allege that she developed ovarian cancer"). Allegations of potential harm to other people cannot establish standing. *See id.* ("references to Baby Powder being unsafe *as to others* are not relevant to determining whether [plaintiff] has standing herself"); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (affirming dismissal for lack of standing where plaintiffs alleged that they purchased lipstick containing lead in an amount greater than permitted, when the complaint lacked any allegation that the product "failed to work for its intended purpose or was worth objectively less than expected").

Standing also requires "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiffs' allegations negate any causal connection. They claim injury because they purchased something they would not have purchased, if they had only known the "truth." CAC ¶ 27. However, the "truth" amounts to information that has been publicly available since 2011, that Plaintiffs plead knowledge about in the CAC. *Id.* ¶ 104 *et seq.*; *see In re Diet Drugs Litig.*, 352 F. Supp. 2d 533, 538-41 (E.D. Pa. 2004) (plaintiffs on notice of information in media reports and press articles). Further, Plaintiffs made the purchases at issue with the involvement of an ordering physician. *See Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 319-21 (5th Cir. 2002) (involvement of an ordering physician creates challenge for establishing causation in an economic injury case). Under these circumstances, Defendants cannot be said to have "caused" Plaintiffs to remain in the dark. Causation is a required element for each claim alleged in the CAC, and this lack of causation requires dismissal.

**B. Plaintiffs Lack Standing To Assert Claims Outside Their Home States.**

Plaintiffs also lack Article III standing to pursue claims under state laws where they do not allege any injury. *See In re Sensipar Antitrust Litig.*, 2022 WL 736250, at *17 (D. Del. Mar. 11, 2022) (plaintiffs only have standing to pursue claims in the states where they allege injury); *In re Valsartan Litig.*, 2021 WL 100204, at *14 (D.N.J. Jan. 12, 2021) (no standing in states where plaintiffs "do not reside and were not injured").

The Third Circuit has held that "a class action is permissible so long as at least one named plaintiff has standing" for "each claim." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359, 364, (3d Cir. 2015). Under *Neale*, claims brought under the laws of states where no plaintiff was injured should be dismissed for lack of standing. *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *17 (D.N.J. Feb. 15, 2019) ("[D]istrict courts within the Third Circuit and throughout the nation have held that named plaintiffs in a class action 'lack standing to bring claims on behalf of putative

classes under the laws of states where no named plaintiff is located and where no named plaintiff purchased the product at issue.'"); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Flonase Antitrust Litigation*, 692 F. Supp. 2d. 524, 533 (E.D. Pa. 2010) (same); *In re Wellbutrin XL Antirust Litigation*, 260 F.R.D. 143, 156–57 (E.D. Pa. 2009) (same). Plaintiffs' claims under 45 states, plus the District of Columbia, in which they did not reside or purchase PGT-A testing, must be dismissed with prejudice for lack of Article III standing.

## III. Plaintiffs' Claims Fail Under the Learned Intermediary Doctrine.

Plaintiffs' core theory is that FPG Labs "failed to inform consumers concerning the numerous studies evidencing issues with PGT-A." CAC ¶ 267. However, states have broadly adopted the "learned intermediary doctrine," which bars "failure-to-warn" claims against medical suppliers whose products or services can only be obtained through a learned intermediary (i.e., a doctor). *See Lacy v. G.D. Searle & Co.*, 567 A.2d 398, 400 (Del. 1989) (adopting the learned intermediary doctrine in Delaware and recognizing the doctrine's prevalence elsewhere). The learned intermediary doctrine recognizes that doctors are best-situated to counsel their patients on the risks and benefits of various treatments, and thus, medical suppliers' "duty to warn of a prescription product's hazards runs to the physician, not directly to the patient." *Rounds v. Genzyme Corp.*, 440 F. App'x 753, 755 (11th Cir. 2011).

The learned intermediary doctrine is recognized in nearly every jurisdiction. *See, e.g.*, *Lacy*, 567 A.2d at 399; *Bean v. Upsher-Smith Pharms., Inc.*, 765 F. App'x 934, 936 (4th Cir. 2019) ("substantial majority of jurisdictions" recognize the doctrine); *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1280-81 (11th Cir. 2002). Courts applying the doctrine routinely dismiss claims under Rule 12(b)(6) where a plaintiff's allegations "seek to impose on Defendant a duty to directly warn the

ultimate consumers of the risks." *Stube v. Pfizer Inc.*, 446 F. Supp. 3d 424, 440 (W.D. Ark. 2020); *Rounds*, 440 F. App'x at 755; *Bean*, 765 F. App'x at 936; *Kamlade v. Leo Pharma Inc.*, 2022 WL 358429, at *3 n.3 (E.D. Cal. Feb. 7, 2022) (California courts "routinely apply the learned intermediary doctrine in dismissing complaints upon motion of defendants").

While historically applied in product liability cases, the doctrine applies to other claims based on similar allegations. "If the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such [as] . . . a claim for misrepresentation, then the doctrine would be rendered meaningless." *Gonzalez v. Bayer Healthcare Pharms., Inc.*, 930 F. Supp. 2d 808, 814 (S.D. Tex. 2013) (collecting cases); *see also Kamlade*, 2022 WL 358429, at *3 (applying learned intermediary doctrine to implied warranty claims); *Stephens v. Teva Pharms., U.S.A., Inc.*, 70 F. Supp. 3d 1246, 1254 (N.D. Ala. 2014) (dismissing fraud claims with prejudice); *Rounds*, 440 F. App'x at 756 (dismissing claims that attempted to "circumvent the learned intermediary doctrine").

In *Lacy*, the Delaware Supreme Court affirmed summary judgment for a contraceptive device ("IUD") manufacturer under the doctrine. The Court reasoned that "[t]he rationale supporting the learned intermediary doctrine is even stronger when applied to the IUD, as opposed to an oral contraceptive, because not only must the physician order the IUD for his patient, but the physician must also fit the IUD in place," and, "[t]hus, the patient is required to rely on her physician's expertise whenever an IUD is used." 567 A.2d at 401. The Court concluded that, "[s]ince the reasons for the learned intermediary doctrine support its application in a case such as this, we hold that it applies." *Id.* The same is true here, as PGT-A testing services are available only through IVF clinics. *See* CAC ¶ 10 ("IVF clinics perform a biopsy and send a small number of cells from the embryo to Ovation or an affiliate laboratory who performs the PGT-A testing.").

Several scholars in the genetic testing space advocate applying the doctrine to developers of genetic tests. *See* Marhant, G., *From Genetics to Genomics: Facing the Liability Implications in Clinical Care* (J. Law Med. Ethics, 2020); Irick, M., *Age of an Information Revolution: The Direct-to-Consumer Genetic Testing Industry and the Need for a Holistic Regulatory Approach*, San Diego L. Rev., 49: 279, 2012. Indeed, Plaintiffs' allegations support applying it here. PGT-A testing is not an off-the-shelf product that consumers can purchase at a retail pharmacy. Rather, PGT-A testing services are available only to patients at a fertility clinic, under the supervision and guidance of a learned intermediary who must biopsy cells from the patient's embryo before testing can be performed. CAC ¶ 10. FPG Labs' marketing materials instruct readers to "[a]sk your fertility specialist about PGT-A." *Id.* ¶ 240. It is the learned intermediary physician that explains the pros and cons of PGT-A screening tests. CAC ¶¶ 10, 240. Thus, Plaintiffs' claims premised on failure to directly warn patients about the downsides of PGT-A testing—all of Plaintiffs' claims—are barred. *See, e.g.*, *Stube*, 446 F. Supp. 3d at 440 ("Plaintiffs' claims should be dismissed to the extent that they are premised on Defendant's failure to directly warn.").

## IV. Plaintiffs' Fraud-Based Claims (Counts I-VII & X-XII) Fail for Several Reasons.

### A. Plaintiffs Fail To Plead Fraud with the Requisite Particularity.

Plaintiffs' statutory and common-law claims in Counts I-VII and X-XII sound in fraud, and must be pled with particularity under Rule 9(b). *See, e.g.*, *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 729 n.4 (M.D.N.C. Aug. 3, 2015) (deceptive conduct under North Carolina's UDTPA must be pled with particularity); *Butts v. Cibo Vita, Inc.*, 2023 WL 2588012, at *8 (E.D. Ca. Ma. 2, 2023) (complaint alleging violations of CLRA and UCL must satisfy 9(b)); *Urban Outfitters, Inc. v. Dermody*, 2022 WL 4134127, at *3 (D. Nev. Sept. 12, 2022) (Rule 9(b) applies to Nevada consumer fraud claims). Rule 9(b) applies to any fraud-based claims, including claims for unjust enrichment, regardless of how such claims are labeled. *See Hawkins v. Shimano*

*N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1013 (C.D. Cal. 2024); *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020); *Cozzarelli v. Inspire Pharms. Inc*., 549 F.3d 618, 629 (4th Cir. 2008) ("a party cannot escape the requirements of Rule 9(b) by adding a superficial label"). Plaintiffs are required to plead "the who, what, when, where, and how of the events at issue." *Baxalta*, 2021 WL 7441631, at *2.

Fraud must be alleged with particularity as to each specific Defendant. *See Urban Outfitters*, 2022 WL 4134127, at *3 (plaintiff must "identify[] the particular time, place, and circumstances of [each defendant's] alleged deceptions," not simply "lump" the defendants together). Thus, the CAC cannot plead fraud with particularity based on allegations about "Defendants" or "Ovation." *See, e.g.*, CAC ¶ 211 (alleging that "Defendants" omitted material facts in "their" advertising materials for PGT-A). Such allegations fail under Rule 9(b).[3]

Regarding the affirmative representations described in the CAC (i.e., that PGT-A testing "benefits everyone," "is greater than 98% accurate," "increases chance of pregnancy," "leads to a higher change of a healthy pregnancy," "reduces the risk of miscarriage," "reduces time to pregnancy," and "leads to no more mosaic embryos"), CAC ¶ 93, it is unclear who made these statements, when and where they were made, what exactly was said, and what further context was provided. It is unclear whether these statements are alleged to be exact quotes or paraphrased. Such allegations fail under Rule 9(b). *See City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) ("complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity"); *Langston v. Ethicon Inc.*, 2021 WL 6198218, at *2 (N.D.

[3] Lumping the "Defendants" together makes Plaintiffs' CAC an improper "shotgun pleading" that is disfavored and subject to dismissal. *See, e.g.*, *Adger v. Carney*, 2020 WL 1475422, at *6 (D. Del. Mar. 26, 2020).

Tex. Dec. 31, 2021) ("Rule 9(b) requires the who, what, when, where, and how of the fraud.").

In *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016), the court dismissed a state-law fraud claim where, as here, the complaint "baldly allege[d] that Plaintiffs 'justifiably relied on the [defendants'] misrepresentations' and 'would have never had Essure implanted had [they] been aware of the falsity of the representations.'" Though the complaint "allege[d] the mode of communication for each alleged misrepresentation," it "fail[ed] to include any allegations as to (1) the date on which each misrepresentation was made, (2) the precise source of certain of the misrepresentations, or (3) the circumstances under which each Plaintiff encountered each misrepresentation prior to having Essure implanted." *Id.* The same logic applies here. *See* CAC ¶ 218 (baldly alleging reliance on purported misrepresentations); ¶ 229 (alleging "website" as mode of alleged representation, but failing to allege date, precise source, or circumstances of plaintiffs encountering it).

When viewed in context, none of the purported misrepresentations are actually false. For instance, the consent form quoted in the CAC includes disclaimers regarding the limitations of PGT-A testing and explicitly warns of the risk of misdiagnosis. Ex. 1 at 2; *see Burlington Coat Factory*, 114 F.3d at 1426 (courts may consider "document[s] integral to or explicitly relied upon in the complaint" on a 12(b)(6) motion to prevent fraud plaintiffs from "extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent"). Plaintiffs cannot plausibly allege fraud or deception in light of the disclaimers. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("the presence of a disclaimer or similar clarifying language may defeat a claim of deception," and "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of

the advertisement in his pleadings and expect his action to survive a motion to dismiss"); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (sweepstakes mailers unlikely to deceive reasonable consumers in light disclaiming language).

The context highlights a disconnect between the purported misrepresentations and the studies Plaintiffs cite. Plaintiffs quibble with advertising live birth rates *per transfer* versus analysis of live birth rates *overall*. CAC ¶ 178. However, courts have dismissed similar claims where the complaint lacks the "factual allegations [to] bridge the studies cited to the conclusion underpinning the alleged falsity." *Hodges v. Vitamin Shoppe, Inc.*, 2014 WL 200270, at *4 n.2 (D.N.J. Jan. 15, 2014); *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 at *7 (S.D. Cal. Nov. 1, 2012) (complaint failed to allege deception based on statement that glucosamine "is good for the body's joints," where studies showed only that it did not alleviate symptoms of osteoarthritis).

Further, many representations quoted in the CAC (i.e., that FPG Labs' PGT-A testing "benefits everyone," had "higher accuracy," "represent[s] the best available genetic tests to support selection of embryos with the best chance of creating a healthy pregnancy," and is "recommended in certain cases to increase the chance of IVF success"), CAC ¶¶ 248, 252, 436, are inactionable puffery. *See Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC,* 318 A.3d 450, 463 (Del. Ch. 2024) (company's optimistic statements praising its own "skills, experience, and resources" are "mere puffery and cannot form the basis for a fraud claim"). Puffery is not fraud. *Id.*; *Garner v. Global Plasma Sols. Inc.*, 590 F. Supp. 3. 738, 744 (D. Del. 2022) (promises of general safety or that a product "will alleviate worry" or give "peace of mind" are not "objectively measurable"); *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 342 (E.D. Pa. 2022) (statements that merely shine a positive light on products are not actionable); *Accelerant Twister, LLC v. Marjo, LLC*, 2023 WL 4457422, at *8, 9 (D. Del. July 11, 2023) ("The law is rightly reluctant to find that

mere expressions of opinion about the future can buttress a claim of fraud"); *In re Subaru Battery Drain Prod. Liab. Litig.,* 2021 WL 1207791, at *25 n.21 (D.N.J. Mar. 31, 2021) ("no reasonable consumer relies on puffery").

Regarding Ovation's allegedly misleading omissions (i.e., omitting "to inform consumers that damage to embryos caused by biopsy may be the reason for unsuccessful IVF outcomes following PGT-A," or "inform consumers concerning the numerous scientific studies evidencing issues with PGT-A"), CAC ¶¶ 265, 267, Plaintiffs have not alleged any basis to conclude that FPG Labs owed a duty to disclose such facts. The CAC is devoid of any facts establishing concealment by any Defendant—and it is not plausible to suggest concealment of information published by third parties over the last decade. *Id.* ¶ 104. Indeed, numerous allegations in the CAC attack FPG Labs' purported representations as insufficiently supported by scientific evidence. *E.g.*, *id.* ¶ 217. Courts reject "lack-of-substantiation allegations" (i.e., allegations that a claim is insufficiently supported by scientific studies) as legally insufficient to establish fraud or deception. *See, e.g.*, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017) (private citizens "are precluded . . . from bringing actions [under the UCL or CLRA] that allege that the challenged advertising language lacked proper scientific substantiation"); *Franulovic v. Coca-Cola Co.,* 390 Fed. App'x. 125, 128 (3d Cir. 2010) (affirming dismissal of consumer fraud claim based on "prior substantiation theory of liability"); Restatement (Third) of Unfair Competition § 2, cmt. d (1995) (lacking "adequate substantiation is not in itself sufficient for the imposition of liability").

Pleading consumer fraud or fraudulent concealment requires more than an omission; the Defendant must have "concealed" the fact or owed a duty to disclose it. *See, e.g.*, *Arçelik, A.Ş. v. E.I. Du Pont de Nemours & Co.*, 619 F. Supp. 3d 473, 485 (D. Del. 2022) (recognizing fraudulent concealment under Delaware law requires "deliberate concealment of a material fact" that is done

"in the face of a duty to speak"); *City of High Point v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 633 (M.D.N.C. 2020) (granting motion to dismiss consumer fraud claim where the plaintiff failed to establish defendant had a duty to disclose a fact that was otherwise concealed or omitted); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (Cal. App. 2015) ("duty to disclose" an element of fraudulent concealment under California law); *Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 229 (Tex. App. 2006) ("fraudulent concealment" under Texas law requires "use of deception to conceal the tort"). Because FPG Labs did not "conceal" anything, and had no duty to disclose publicly available information about PGT-A testing, these so-called "omissions" are not actionable.

**B. Plaintiffs Lack an Essential Element of Fraud: Reliance.**

Plaintiffs' fraud-based claims fail due to their inability to plausibly allege reliance or actual deception, as needed to establish a causal nexus between the alleged conduct and injury. *See Hunt v. United States Tobacco Co.*, 538 F.3d 217, 223 (3d Cir. 2008); *In re Nissan N. Am., Inc.*, 122 F.4th 239 (6th Cir. 2024) ("Reliance looms large in fraud claims."). The CAC lacks any allegation that Plaintiffs ever visited any website or viewed the alleged misrepresentations before purchasing PGT-A services. Thus, they cannot be said to have relied on such statements. *See Resnick v. Hyundai Motor Am., Inc.*, 2016 WL 9455016, at *10 (C.D. Cal. Nov. 14, 2016) (dismissing claims alleging fraudulent concealment, violation of California's UCL and CLRA, and North Carolina's UDTPA for failure to allege reliance); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Cal. Ct. App. 2010) (affirming dismissal of a plaintiff's UCL claims where he did not allege facts indicating that he relied on representations on the defendant's website or on language in an agreement he signed); *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015) (dismissing consumer fraud claims for lack of reliance).

Further, the scientific studies that Plaintiffs quote in the CAC to show the perils of PGT-A

testing were published by third-party scientists or organizations as early as 2011—more than a decade before Plaintiffs' purchased PGT-A testing. CAC ¶ 104. Plaintiffs, thus, plead knowledge of those studies as they were on notice of such information. *See Marcus v. BMW of N. Am.*, 687 F.3d 583, 607 (3d Cir. 2012) (holding that plaintiff's knowledge of the alleged deception "prior to purchasing" the product at issue was "highly relevant to whether that consumer can succeed" on a state law consumer fraud claim); *Greening v. Western Reserve Life Assurance Co.*, 439 F. Supp. 2d 612, 614 (M.D. La. 2006) (dismissing Louisiana fraud claim where "plaintiffs had complete access to the correct information prior to the sale," and thus they could not be said to have reasonably relied on the alleged deception).

Caselaw instructs that Plaintiffs are not entitled to rely on omissions of material fact, when they had knowledge and information that allowed them to be aware of the alleged falsity in the statements at issue. *See Docena v. Navy Fed. Credit Union*, 2016 WL 53826, at *4 (D. Nev. Jan. 4, 2016) (dismissing NDTPA claim because "a reasonable consumer would have been put on notice simply by doing sufficient reading"); *Freeman*, 68 F.3d at 289 (same under California's UCL).

### C. Louisiana Does Not Allow Class Actions for Consumer Fraud.

Louisiana's Unfair Trade Practices Act specifically disallows class actions. *See Morris v. Sears, Roebuck and Co.*, 765 So.2d 419, 421–22 (La. App. 2000) (affirming dismissal under Section 1409 of LUTPA, which prohibits "an individual from instituting class actions for actual damages"). Accordingly, Claim V must be dismissed. *See, e.g.*, *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. LA 2002) ("Both federal and state court jurisprudence confirms that private individuals may not assert class actions under LUTPA.").

## V. Plaintiffs' U.C.C. Claims (Counts VIII, IX, and XIII) Fail for Several Reasons.

Plaintiffs' state law U.C.C. claims fail because the U.C.C. only applies to the sale of goods—not services. *See* U.C.C. § 2-102; *see also, e.g.*, *NAC Consulting, LLC v. 3Advance, LLC*,

650 F. Supp. 3d 441, 451-52 (E.D. Va. 2023) (granting 12(b)(6) motion where transaction involved services, not goods). Counts VIII, IX, and XIII are based on state statutes adopting Article 2 of the U.C.C., which applies only to sales of goods. This is true in the Named Plaintiff States and Non-Named-Plaintiff States alike. *See* Cal. U.C.C. § 2102; N.C. Gen. Stat. Ann. § 25-2-103(1)(d); La. Civ. Code Ann. Art. 2520, Art. 2322.1; Nev. Rev. Stat. §§ 104.2102(1); V.T.C.A., Bus. & C. § 2.102; *see also, e.g.*, 810 ILCS 5/2-102(1); N.Y. U.C.C. Law § 2-102; Del. Code Ann. tit. 6 § 2-102(1); Fla. Stat. Ann. § 672.102; 19 Pa. Stat. § 2102(a).

A transaction involving medical care is considered a "service" under U.C.C. laws. *In re TMJ Implants Prod. Liab. Litig.*, 872 F. Supp. 1019, 1035–36 (D. Minn. 1995) (claims of improper medical services not grounded in U.C.C.); *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 60 (1st Cir. 2021) (holding that "a pharmacist's dispensation of prescribed medication is predominately the provision of services, not the sale of goods."); *Johnson v. Smith & Nephew, Inc.,* 621 F. Supp. 3d. 593, 601 (W.D.N.C. 2022) (physicians render "services, not the transfer of title of medical goods"); *In Re Yasmin Prods. Liab. Litig.*, 692 F. Supp. 2d 1012, 1023 (S.D. Ill. 2010) (pharmacists filling prescriptions perform a "service" as they "utilize[e] professional skill and care").

PGT-A testing is a screening service marketed "as an add on to the IVF process and purports to screen embryos for chromosomal abnormalities" by taking a biopsy from a portion of the embryo, which is then used to conduct DNA testing. CAC ¶¶ 71, 83. There are no tangible, moveable goods exchanged in PGT-A testing. *See* U.C.C. § 2-105. Rather, patients seek evaluation and interpretation of their embryo's DNA. Indeed, even Plaintiffs describe PGT-A testing as a "service." CAC ¶¶ 11, 41, 217, 340, 368, 370, 389, 399, 413. Press releases cited in the CAC also describe USF and FPG Labs as organizations that provide "service[s,]" not goods. CAC ¶¶ 40–42, 156. Thus, Plaintiffs' claims under state U.C.C. laws must be dismissed.

### A. Plaintiffs Fail To Allege Privity.

Plaintiffs' U.C.C. claims fail for the additional reason that the CAC does not allege privity between Plaintiffs and FPG Labs. Rather, each Named Plaintiff claims to have purchased PGT-A testing "from Ovation"—where "Ovation" is defined in the CAC to collectively refer to both FPG Labs and Ovation Genetics. CAC at 1, ¶¶ 293, 296, 299, 302, 305, 308, 311. Many states preclude claims for U.C.C. remedies against remote manufacturers due to privity requirements, including California, North Carolina, and Nevada. *E.g.*, *U.S. Roofing, Inc. v. Credit All. Corp.*, 228 Cal. App. 3d 1431, 1441 (Cal. App. 1991); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.,* 351 N.C. 331, 338 (N.C. 2000); *KB Home Nev., Inc. v. Dunrite Constr.*, 402 P.3d 1253 (Nev. 2017). Plaintiffs do not allege that they purchased PGT-A testing from any particular Defendant—especially not USF. Plaintiffs' allegations fail under Rule 8, and their U.C.C claims must be dismissed. *See Adger*, 2020 WL 1475422, at *6; *Foulke v. Twp. of Cherry Hill*, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024) ("shotgun" pleadings that fall short of Rule 8 subject to dismissal).

### B. Plaintiffs Fail To Allege that *Their* PGT-A Testing Was Defective.

Counts VIII and IX also fail because Plaintiffs have not alleged that *their* PGT-A testing did not work as advertised. *See supra* § II.A. In order "[t]o establish a breach of [the implied warranty of merchantability or usability], plaintiffs must show that the equipment they purchased from defendant was defective," meaning it "functioned improperly in the absence of normal use and reasonable secondary cause." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *see also Gaston v. PBI Gordon Corp.*, 2014 WL 4114324, at *5 (M.D.N.C. Aug. 20, 2014) (granting motion to dismiss implied warranty claim where "Plaintiff has not alleged any facts that Defendant's [product] was defective at the time of sale"); *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 531 (Ct. App. 1995); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999); *Hill v. Eli Lilly & Co.*, 2020 WL 4925688, at *4 (D. Nev. Aug. 21,

2020); La. Civ. Code Ann. Art. 2520. As Plaintiffs do not allege that the PGT-A testing they purchased functioned improperly, they cannot state a claim for breach of implied warranty.

**C. Plaintiffs' Express Warranty Claims Must Be Dismissed for Lack of Reliance.**

Plaintiffs' failure to allege reliance, *see supra* § IV.B, dooms their express warranty claim. *See, e.g.*, *Ascot Corporation, LLC v. I&R Waterproofing, Inc.*, 286 N.C. App. 470, 475 (N.C. App. 2022) (express warranty must be "relied upon by the plaintiff"); *Weinstat v. Dentsply Internat., Inc.,* 180 Cal. App. 4th 1213, 1217 (Cal. App. 2010) (statement must be "part of the basis of the bargain"); *Tuminello v. ABC Ins. Co.*, 381 So.3d 320, 341 (La. App. 2024) (requiring that "the plaintiff was induced to use the product because of that warranty"); *Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 407 S.W.3d 274, 291 (Tex. App. 2013) (buyer must have "relied upon said affirmation of fact or promise"); See N.R.S. § 104.2607(3) (requiring that the "promise or description formed part of the basis of the bargain"). Because Plaintiffs cannot allege reliance, Count XIII must be dismissed with prejudice. *Id.*; *see also Freed*, 364 F. Supp. 3d at 354 (dismissing express warranty claim where plaintiff alleged misrepresentations made on a website, but did not allege which specific statements she saw).

**VI. Counts V-VI and Counts IV & X-XII Are Time-Barred in Whole or Part.**

Counts V (La. Rev. Stat. § 51:1401, *et seq.*) and VI (Tex. Bus. & Com. Code § 17.41, *et seq.*) are time-barred and must be dismissed in full, with prejudice. *See* La. Rev. Stat. tit. 51, § 1409(E) (one-year limitations period); CAC ¶¶ 308, 311 (last purchase in support of claim, Sept. 2023, more than one year before CAC filed, Oct. 31, 2024); Tex. Bus. & Com. Code § 17.565 (two year limitations period); CAC ¶ 302 (last purchase in support of claim, May 2022).

Count IV (Cal. Civ. Code § 1750, *et seq.*) is time-barred as to California Named Plaintiff Mendoza. Cal. Civ. Code § 1783 (three-year limitations period); CAC ¶ 299 (last purchase, Nov. 2020). Counts X-XI (fraud and fraud by concealment) are time-barred as to the Louisiana Named

Plaintiffs. *See* La. Civ. Code tit. XXIV, Art. 3492 (one-year limitations period). Count XII (unjust enrichment) is time-barred as to the Texas Named Plaintiff. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (two-year limitations period). Such claims must be dismissed with prejudice as to those Named Plaintiffs.

## VII. Plaintiffs' Unjust Enrichment Claim (Count XII) Is Inadequately Pled.

Plaintiffs' failure to specify the law or laws under which they bring their unjust enrichment claim requires dismissal. *See Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729, 740 (D. Del. 2012); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009); *see In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *31 (E.D. Mich. June 6, 2013) (plaintiffs' "failure to identify the unjust enrichment laws of any particular jurisdiction subjects the causes of action to dismissal"); *accord In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007). Plaintiffs improperly presume that Delaware's law will apply to these claims, ignoring a variety of state-law-specific issues. *See In re Actiq*, 307 F.R.D. at 163-67 (applying law of each plaintiff's residence to unjust enrichment claims).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Class Action Complaint in its entirety with prejudice.

**MCDERMOTT WILL & EMERY LLP**

/s/ *Anna L. Fosberg*
Ethan H. Townsend (#5813)
Anna L. Fosberg (#6802)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Tel: (302) 485-3911
ehtownsend@mwe.com
afosberg@mwe.com

*Attorneys for Defendants*

OF COUNSEL:

Daniel R. Campbell
Brigid McCarthy
Chelsea Mounayer
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606-0029

Dated: January 6, 2025