IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RACHEL KLOSOWSKI, et al.,                )
                                         )
                    Plaintiffs,          )
                                         )
        v.                               )    C.A. No. 24-1210 (MN)
                                         )
FPG LABS, LLC d/b/a OVATION              )
FERTILITY, US GENETIC LAB, LLC           )
d/b/a OVATION GENETICS, et al.,          )
                                         )
                    Defendants.          )

## <u>MEMORANDUM OPINION</u>

Russell D. Paul, BERGER MONTAGUE PC, Wilmington, DE; Shanon J. Carson, BERGER MONTAGUE PC, Philadelphia, PA; Zoe Seaman-Grant, BERGER MONTAGUE, PC, Chicago, IL; Allison S. Freeman, CONSTABLE LAW P.A., Paula S. Bliss, JUSTICE LAW COLLABORATIVE LLC, No. Easton, MA – Attorneys for Plaintiffs

Ethan H. Townsend, Anna Fosberg Martin, MCDERMOTT WILL & EMERY LLP, Wilmington, DE; Daniel R. Campbell, Brigid McCarthy, Chelsea Mounayer, MCDERMOTT WILL & EMERY LLP, Chicago, IL – Attorneys for Defendants

September 3, 2025
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendants' motion to dismiss the Class Action Complaint ("Complaint") for failure to state a claim. (D.I. 16, 18). For the reasons set forth below, the Court will GRANT the motion.

## I.    BACKGROUND

### A.    The Parties and PGT-A Testing

This is a putative class action initiated by 9 individuals: Rachel and Adam Klosowski, Janine and Jonathan Carlin, Laura Mendoza, Michelle Schafer, Dori Shick, Soupharack Vannasing, and Lauren Teverbaugh ("Plaintiffs" or "Named Plaintiffs"). (D.I. 1 ¶¶ 28-36). According to the Complaint, each of the Named Plaintiffs "received fertility treatment" and purchased "preimplantation genetic testing for aneuploidy," known as "PGT-A" or "PGT-A testing." (*Id.* ¶¶ 1, 28-36). PGT-A is "an add-on to the IVF process and purports to screen embryos for chromosomal abnormalities." (*Id.* ¶ 9).

Plaintiffs claim they suffered economic losses after buying PGT-A testing from Defendants based on "false, deceptive, unfair, and misleading advertising, marketing, and/or promotion" between November 2020 and October 2023 ("the Class Period"). (*Id.* ¶¶ 1, 28-36, 293-313). They bring this lawsuit on behalf of themselves and "all persons in the United States who have purchased PGT-A testing from Defendants," and seek to represent a nationwide class and five state subclasses from California, Louisiana, Nevada, North Carolina, and Texas. (*Id.* ¶¶ 314-320).

Defendants FPG Labs, LLC and US Genetic Lab, LLC are Delaware limited liability companies headquartered in Brentwood, Tennessee (together, "Ovation"). (*Id.* ¶¶ 37-38). According to the Complaint, Ovation is a "national leading network of fertility laboratories providing leading-edge treatment." (*Id.*). Defendant US Fertility, LLC (with Ovation,

"Defendants") is a Delaware limited liability company headquartered in Rockville, Maryland. (*Id.* ¶ 39).

"With respect to PGT-A conducted by Ovation, IVF clinics perform a biopsy and send a small number of cells from the embryo to Ovation or an affiliate laboratory who performs the PGT-A testing and provides results to the customer and their clinic." (*Id.* ¶ 10). The Complaint alleges that the test results "determine which embryos are 'euploid' or best suited for implantation and which embryos are 'aneuploid' or abnormal and not suited for implantation." (*Id.*).

### B.    The Complaint's Allegations

Each of the Named Plaintiffs allegedly "purchased PGT-A testing from Ovation" during a certain month and year during the putative Class Period, in reliance and "based upon the false, deceptive, and misleading statements" and material omissions made by Ovation, "including that PGT-A is greater than 98% accurate, increases the chance of pregnancy, decreases the chance of miscarriage, leads to a higher chance of a healthy pregnancy, and reduces the time to pregnancy." (*Id.* ¶¶ 293-313). The Complaint further alleges that each Named Plaintiff paid a certain price for PGT-A, "which they would not have purchased absent the false and misleading misrepresentations and omissions." (*Id.*). As a result, the Complaint says, "Plaintiffs suffered direct and ascertainable economic losses" and "were harmed by paying for an unproven an unreliable test." (*Id.* ¶¶ 290-92). Notably, none of the Named Plaintiffs allege that the PGT-A testing they bought failed to work specifically *for them*. (*See id.* ¶¶ 293-313).

### C.    Procedural History

Plaintiffs initiated this action on October 31, 2024, asserting 13 claims for violations of state consumer protection statutes, common law fraud, breach of warranty, and unjust enrichment. (D.I. 1). On January 6, 2025, Defendants moved to dismiss for lack of standing and failure to state

a claim. (D.I. 16, 18). Briefing on the motion was completed on March 12, 2025, and the Court held oral argument on July 28, 2025. (D.I. 17, 19, 26, 27, 28, 29, 36).

The Court now addresses the motion.

## II.    LEGAL STANDARD

To have standing to sue, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023). An injury in fact exists if a plaintiff has suffered "[(1)] an invasion of a legally protected interest which is [(2)] concrete and particularized, and [(3)] actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). "The burden to establish standing rests with the plaintiffs." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016).

## III.    DISCUSSION

The Complaint alleges that each of the Named Plaintiffs "purchased PGT-A testing from Ovation" during the Class Period, in reliance and "based upon the false, deceptive, and misleading statements" and material omissions made by Ovation, "including that PGT-A is greater than 98% accurate, increases the chance of pregnancy, decreases the chance of miscarriage, leads to a higher chance of a healthy pregnancy, and reduces the time to pregnancy." (D.I. 1 ¶¶ 293-313). Furthermore, each Named Plaintiff alleges they paid a certain price for PGT-A, which they "would not have purchased" absent the false and misleading misrepresentations and omissions, and, as a result, "suffered direct and ascertainable economic losses" and "were harmed by paying for an unproven and unreliable test." (*Id.* ¶¶ 290-92). In essence, Plaintiffs claim they overpaid for a product that did not work as it was supposed to – despite Defendants' representations that it did.

4

"This is known as the benefit-of-the-bargain theory of injury." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

As the Third Circuit has recently said on several occasions in the benefit-of-the-bargain context, "[a] plaintiff alleging an economic injury as a result of a purchasing decision must do more than simply characterize that purchasing decision as an economic injury. The plaintiff must instead allege facts that would permit a factfinder to determine, without relying on mere conjecture, that the plaintiff failed to receive the economic benefit of her bargain." *In re Johnson & Johnson Talcum Powder Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) ("*J&J*"); *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 886 (3d Cir. 2020); *Huertas*, 120 F.4th at 1176-77. Many other Circuits have held the same. *See, e.g.*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 531-32 (7th Cir. 2024); *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021); *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). That yields "a clear lesson: a plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing." *J&J*, 903 F.3d at 285.

That is because "allegations that a product is [flawed] *as to others* are not relevant to determining whether named plaintiffs have standing themselves." *Huertas*, 120 F.4th at 1178 (citation modified); *J&J*, 903 F.3d at 289. Instead, once "Plaintiffs have plausibly alleged economic injury, [the Court] must still determine whether they sufficiently alleged that *their* products were defective[]." *Huertas*, 120 F.4th at 1178; *Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.") (citation omitted). "Otherwise, their claim that they purchased a product worth less than the product for which they bargained necessarily fails, and they are not entitled to relief under the benefit-of-the-bargain theory." *Huertas*, 120 F.4th at 1178;

*Pineda v. Lake Consumer Prods., Inc.*, No. 24-1074 (JMG), 2024 WL 5001928, at *3 (E.D. Pa. Dec. 5, 2024) ("Plaintiff must plausibly allege that her product was defective[].").

Here, the Complaint provides studies that purport to undermine the scientific efficacy of Ovation's PGT-A testing and the representations that it "increases the chance of pregnancy, decreases the chance of miscarriage, [and] leads to a higher chance of a healthy pregnancy." (D.I. 1 ¶¶ 293, 296, 299, 302, 305, 308, 311). But, as in the Third Circuit's seminal *Johnson & Johnson* decision, the Complaint "does not allege that [*the Named Plaintiffs' testing*] failed to adequately perform any of these functions." *J&J*, 903 F.3d at 281 (emphasis added); *Pep Boys*, 980 F.3d at 886 ("[M]issing were allegations that the product was unsafe *as to [Plaintiff]*."). "To be clear, other than the short proclamation that 'in [a specific month and year],' [each Named] Plaintiff purchased [PGT-A for a certain price], Plaintiff[s] provide[] no further allegations about [their] individual purchase[s]." *Grodnick v. Johnson & Johnson*, No. 24-2616 (MAS), 2024 WL 5056411, at *3 (D.N.J. Dec. 10, 2024). That is fatal for the standing inquiry.

None of the Named Plaintiffs allege, for example, that they failed to become pregnant, suffered a miscarriage, or experienced a medically compromised pregnancy – notwithstanding Ovation's alleged marketing statements that PGT-A mitigates all of those problems. Indeed, Plaintiffs' conclusory assertions of harm are all the more implausible here given that some of these adverse outcomes are directly in conflict with and mutually exclusive of one another. *See Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 460-61 (3d Cir. 2024); *Finkelman*, 810 F.3d at 202 ("Insofar as we construe the complaint to allege that [plaintiff] paid more for his [product] than he would have absent [defendant's] alleged misconduct, that contention is a 'bald assertion' unsupported by well-pleaded facts."); *Cook v. GameStop, Inc.*, No. 23-2574, 2025 WL 2250261, at *5 (3d Cir. Aug. 7, 2025) ("[Plaintiff] does not allege a kind of harm sufficient for standing.

This conclusion is not a premature merits determination, but an assessment of the plausibility of her alleged injury as it pertains to standing.").

Instead, Plaintiffs' "theory of recovery is simply that [they] suffered an economic injury by *purchasing* improperly marketed [testing]." *J&J*, 903 F.3d at 282; *Huertas*, 120 F.4th at 1176. That is illustrated by the Class Action Allegations, which purport to bring this lawsuit "on behalf of all persons in the United States who have purchased PGT-A testing from Defendants," with no mention of harm whatsoever. (D.I. 1 ¶ 314). Thus, because the Complaint lacks "any allegation that [Plaintiffs] received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [they] ha[ve] not demonstrated a concrete injury-in-fact." *Koronthaly v. L'Oreal USA, Inc*., 374 F. App'x 257, 259 (3d Cir. 2010).

Accordingly, the Court finds that Plaintiffs have failed to adequately allege Article III standing and will grant the motion to dismiss on that basis.[1]

---

[1]     Defendants also contend that "Plaintiffs lack standing to assert claims outside their home states." (D.I. 19 at 7) (capitalization omitted). As the Court has discussed in two recent opinions on this issue, courts in this Circuit are split as to whether such a challenge may be properly heard as a standing issue on a motion to dismiss, or whether class certification is the correct vehicle for the analysis. Third Circuit precedent appears to permit either approach. *See Costa v. Whirlpool Corp*., No. 24-188 (MN), 2025 WL 885245, at *12-13 (D. Del. Mar. 21, 2025); *Crowell v. FCA US LLC*, No. 23-13 (MN), 2024 WL 4333088, at *12 (D. Del. Sept. 27, 2024). As this Court explained in *Costa*, it is generally skeptical that a plaintiff can maintain a state law cause of action across all fifty states given the nuances in the law from jurisdiction to jurisdiction. 2025 WL 885245, at *13. Nonetheless, because that inquiry is better settled at the class certification stage, the Court declines to dismiss those claims at this juncture. Plaintiffs should consider the foregoing if they choose to amend.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss the Class Action Complaint (D.I. 16, 18) are GRANTED without prejudice.  Pursuant to their request, Plaintiffs may attempt to replead.[2]  (*See* D.I. 26 at 17-18; D.I. 27 at 16).  An appropriate order will follow.

---

[2]    At oral argument, Plaintiffs acknowledged that they failed to state a class claim under the Louisiana Unfair Trade Practices Act.  (D.I. 36 at 48:6-12).  That dismissal will be entered with prejudice, given that the face of the Act does not permit class actions, *see* La. R. Stat. § 51:1409(A), and "[b]oth federal and state court jurisprudence confirms that private individuals may not assert class actions under [the Act]."  *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 556-57 (M.D. La. 2002); *Plaza 22, LLC v. Waste Mgmt. of Louisiana, LLC*, No. 13-618 (SDD), 2015 WL 1120320, at *2 (M.D. La. Mar. 12, 2015) ("Louisiana courts have interpreted the [Act's] language as a clear ban against class actions by private persons.") (internal quotation marks omitted); *Montegut v. Williams Commc'ns, Inc.*, 109 F. Supp. 2d 496, 498 (E.D. La. 2000) ("LUTPA claims may only be brought by an individual, and cannot be brought in a representative capacity.").